Howell, J.
On the twentieth day of May, 1870, the defendant Dalferes, with J. M. Johnston as his surety, chartered the steamboat Right Way from the plaintiffs, to be used by him in the Lafourche trade for the term of four months, at the rate of $800 per month, payable in advance. In the charter party it was expressly agreed that the said boat was tight, staunch and strong and well and .sufficiently tackled and appareled, with all things necessary for such a vessel and the business and trade in which she was to be engaged; that the charterer was to have full control of her, and at the expiration of the charter, to return her and her appurtenances to the. plaintiffs at New Orleans in like good order and condition as when first delivered to him, the usual damage, wear and tear, consequent upon navigation and acts of God, fire and dangers of navigation excepted.
About the eighteenth or twentieth of July following one of the boilers exploded and the boat sank at a landing in the Bayou Lafourche, a few miles above Thibodaux-. This suit was instituted on twenty-first September same year for the value of the boat and a balance of the second month’s rent or hire. Dalferes averred that nothing was due the plaintiffs, that by the explosion and the sinking of the boat the *380 contract was terminated, that in hiring the boat he acted to the knowledge of plaintiffs for the Coast and Lafourche Packet Company, for whose account she was run ; that he was not master and not on board; that she was in charge of competent and skillful officers as required by the law; that there was no negligence or fault on the part of himself or those in charge; that the explosion was attributable either to the defective condition of the boilers and machinery at the date of the charter, and which required repairs immediately thereafter, or some other cause beyond the power and control of himself or those for whom he is answerable, and he called the Coast and Lafourche Packet Company in warranty. This companyand Johnston, the suretyj adopted substantially the defendants’ answer, the latter averring that the charter had been transferred without his knowledge or consent. The defendants and warrantors have appealed from a judgment against them, and the plaintiffs from a judgment in favor of Johnston the surety.
The plaintiffs’ counsel say “ the first question to be determined is whether the words, ‘acts of Grou, fire and dangers of navigation’ whieh were excepted in the charter party, would cover a loss by explosion ?” and they cite 14 An. 501 ; 5 E. 138; 23 Law Rep. 277; 16 Howard 472; 24 How. 386; 1 Sprague 477; 1 Clifford 322 ; 8 Wallace 160 and 162; 1 Parsons on Ship, and Adm. 257, as authority in the negative. These authorities refer to the responsibility of owners as common carriers and most of them are based on the act of Congress declaring the fact of explosion to be full prima facie evidence of negligence on the part of the defendant; while this is an action by the owners against their lessee for the value of the property hired by them to the latter. “The lessee is bound, first, to enjoy the thing leased as a good administrator according to the use for which it was intended by the lease; second, to pay the rent at the terms agreed on.” E. C. C. 2710.
The evidence in this case does not show that the defendant violated this obligation ; and we think it unnecessary to go into an analysis of the conflicting testimony in order to ascertain and definitively settle upon the cause of the explosion on scientific principles.
The charterer, when he has complete control of the vessel, as in this case, is pro hac vice owner as to parties dealing with him in such capacity, but he is not such in a contest with the actual owners for the value of the vessel under the terms of the charter party. In such contest the burden is on the owners to prove the negligence of the charterer.
It is therefore ordered that the judgment appealed from be reversed and that there be judgment in favor of defendant and warrantors with costs.
Eehearing refused.